IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FRANCISCO ARZATE, TDCJ #01821766, §
§
          Petitioner, §
§
v. §
§     CIVIL ACTION NO. H-16-3782
§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice - Correctional §
Institutions Division, §
§
          Respondent. §

## MEMORANDUM OPINION AND ORDER

Francisco Arzate has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), seeking relief under 28 U.S.C. § 2254 from a capital murder conviction that resulted in a sentence of life imprisonment. The respondent has filed a Motion for Summary Judgment with Brief in Support ("Respondent's Motion") (Docket Entry No. 18), along with a copy of the state court records (Docket Entry Nos. 14-17). Arzate has filed Petitioner's Reply to Respondent's Motion for Summary Judgment with Brief and Affidavit in Support ("Petitioner's Reply") (Docket Entry No. 19). After considering all of the pleadings, the state court record, and the applicable law, the court will grant Respondent's Motion and will dismiss this action for the reasons explained below.

## I. Background

A grand jury returned an indictment against Arzate in Harris County cause number 1317247, charging him with capital murder for killing his father-in-law, Guillermo Valdez, by shooting him with a deadly weapon, a firearm, while committing burglary of Valdez's habitation.[1]  The state presented evidence that Arzate shot his father-in-law and his mother-in-law, Maria Valdez, multiple times during the same incident,[2] which stemmed from a dispute with his wife, Patricia, from whom Arzate was separated.[3] On November 12, 2012, a jury in the 232nd District Court of Harris County, Texas, found Arzate guilty as charged in the indictment.[4] Because the state did not seek the death penalty, the trial court automatically sentenced Arzate to life without parole pursuant to § 12.31(a)(2) of the Texas Penal Code.[5]

On direct appeal Arzate challenged the legal sufficiency of the evidence to support his conviction.[6]  An intermediate court of

_____

[1]Indictment, Docket Entry No. 14-9, p. 21.

[2]Court Reporter's Record, vol. 5, Docket Entry No. 15-18, pp. 129-36, 138-39.

[3]Court Reporter's Record, vol. 6, Docket Entry No. 15-19, pp. 38-46.

[4]Verdict, Docket Entry No. 14-10, p. 32.

[5]Judgment of Conviction by Jury — Non-Death Capital, Docket Entry No. 14-12, p. 23.

[6]Brief of Appellant, Docket Entry No. 14-2.

appeals rejected that argument after summarizing the evidence presented at trial as follows:

> Arzate was married to Maria and Guillermo Valdez's daughter, Patricia, for almost ten years, but he and Patricia had separated two years before the incident. Patricia and Arzate had five children. Patricia testified that she and Arzate had an unstable relationship and often fought and that she moved to her parents' home upon her separation from Arzate. In August 2011, Arzate was upset because he had recently learned that Patricia was in a relationship with another man. Arzate had called Patricia upset about her boyfriend and threatened that he would take action if Patricia did not end that relationship.

> Patricia testified that on the day of the incident, August, 19, 2011, she talked to Arzate about paying school tuition, but they did not fight, and it was a "normal day." Arzate left a voicemail on Patricia's phone around 11:30 p.m. that night saying that "he was suffering so [Patricia was] going to suffer the same way that he was suffering." Patricia was at the hospital with her oldest son that night, but she called her sister because the voicemail worried her. A few minutes later, Maria called Patricia and told her that Arzate had shot Maria and Guillermo.

> Although Patricia was not at her parents' home at the time of the shooting, several others were. Maria testified that she and Guillermo were in their bedroom watching television with the door closed late at night when Maria heard a noise. Guillermo opened the bedroom door, Maria heard Arzate say "he was going to kill us," and Arzate began shooting at Maria and Guillermo. Maria testified that she had heard Arzate's voice on many occasions and immediately recognized it. Maria also testified that she saw the side of the shooter's body and it looked like Arzate. On the night of the shooting, Maria told police that she saw only the shooter's shadow, and not the shooter's face.

> Guillermo and Maria's other daughter, Elizabeth, was also at the scene. She had fallen asleep in one of the bedrooms a little after midnight, but she woke up when she heard Arzate screaming in Spanish from the living room several times, "where's the bastard?" Elizabeth

then heard gunshots and Maria screaming, so she ran to the living room and saw that the front door, which had been closed and locked, was open and appeared to have been forced open. She saw that Guillermo was lying on his back — shot more than once — and Maria was bleeding. When Elizabeth saw Maria, Maria was screaming, "why Francisco, why?" and Elizabeth believed that Maria was referring to Arzate. Elizabeth did not see the shooter, but she testified that there was no doubt in her mind that the voice she heard yelling "where is the bastard?" was the voice of Arzate.

Elizabeth's thirteen year old son, Heron, was also home and sleeping on the living room couch when the shooting took place. Heron testified that he also heard Arzate yelling, "where was the bastard at?" Heron did not see Arzate on the night of the shooting, but recognized his voice because he had often visited Arzate's house. Heron also testified that he heard Maria say, "why Francisco, why?"

By the time police and EMS arrived, Guillermo was dead from four gunshot wounds. Arzate called Patricia after the incident, but she did not answer.

The day after the shooting, Arzate called his employer, Richard Gonzalez, and told him "that he wasn't going to be coming in because he had an issue, something happened with his family and he doesn't know if he's ever going to come back." Gonzalez testified that during the same phone call, Arzate also said, "what happened happened."

The police suspected Arzate was the shooter and that he had fled to Mexico shortly after the shooting. Arzate's brother and sister testified that Arzate went to Mexico but added that the trip was a planned vacation to visit family. Patricia testified that this was Arzate's first trip to Mexico and that he would not have vacationed there because he did not have documentation that would allow him to re-enter the United States.

A few months after the shooting, Arzate sent Patricia a text message that said, "I'm sorry. Are you guys okay. Are my kids okay." Patricia testified that Arzate also called her from Mexico. In one such call, Arzate, who had said he was angry that Patricia was not taking his calls, threatened Patricia by saying that "The same thing that he did to [her] dad he was going to do it to [her]

grandma, that he knew where she lived and he was going to go over there and get her also."

Patricia also testified that Arzate attempted to have her create an alibi for him. In a letter, Arzate wrote: "do it for our children and for the love we had between us. You know it wasn't my fault about your father. Why do you want to take your children's father away." The letter continued: "If you feel something in your heart you tell the lawyer that I was in Mexico."

Arzate also called Gonzalez and threatened that Gonzalez would suffer the same fate as Guillermo. When Arzate left for Mexico, Arzate had left his car and tools with Gonzalez. Gonzalez testified that Arzate told him that if Gonzalez did not pay Arzate's brother for the vehicle and his tools, that he "was going to kill me and come after my family." Gonzalez testified that Arzate added, "If you don't believe me you saw what happened to my in-laws."

Arzate v. State, No. 01-12-01074-CR, 2013 WL 6670854, at *1-2 (Tex. App. — Houston [1st Dist.] Dec. 17, 2013). The Texas Court of Criminal Appeals refused Arzate's petition for discretionary review.[7]

Shortly after Arzate's conviction was affirmed on direct appeal he received a letter from the Harris County District

_____

[7]Arzate's initial petition for discretionary review was stricken as untimely filed. See Arzate v. State, No. PD-0091-14 2014 WL 1875372 (Tex. Crim. App. May 7, 2014). Arzate filed a state habeas corpus application alleging that his appellate attorney had promised to file a petition for discretionary review, but failed to do so. See State Habeas Application, Docket Entry No. 17-4, p. 10. On October 14, 2015, the Texas Court of Criminal Appeals granted relief and allowed Arzate to file an out-of-time petition for discretionary review. See Action Taken on Ex parte Arzate, Writ No. 83,117-01, Docket Entry No. 16-11, p. 1. The out-of-time petition for discretionary review was refused by the Texas Court of Criminal Appeals on February 10, 2016. See Arzate v. State, PD-1343-15.

-5-

Attorney's Office.[8] That letter, which is dated May 20, 2014, advised Arzate that Sergeant Ryan Chandler of the Houston Police Department ("HPD") Homicide Division, who investigated Arzate's case, had been fired on April 4, 2014, for (1) falsifying an offense report by documenting a conversation with an Assistant District Attorney who advised him to refer the case to a grand jury for review while never forwarding the case to the District Attorney's Office; and (2) making untruthful and misleading statements during an ensuing investigation of that incident by the HPD Internal Affairs Division ("IAD").[9] At a press conference about the termination, then-HPD Chief Charles A. McClelland, Jr., commented that Chandler was fired because he was "lazy" and he was "a liar."[10]

In a state habeas corpus application filed on June 20, 2016, Arzate argued that he was entitled to relief from his conviction because Chandler conducted an inadequate investigation.[11] Arzate argued further that he was denied effective assistance of counsel at his trial and that one of the state's key witnesses "violated

---

[8]May 20, 2014, Letter to Francisco Arzate, Docket Entry No. 16-16, pp. 59-60.

[9]Id. at 59.

[10]Id. at 60 (summarizing Chief McClelland's statement and providing a link to a video of the press conference).

[11]Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07 ("State Habeas Application"), Case No. 1317247-C, Docket Entry No. 16-16, pp. 11-12.

the witness rule" by discussing the case with another person who had been in court listening to the testimony.[12]  The state habeas corpus court, which also presided over Arzate's trial, entered findings of fact and concluded that he was not entitled to relief.[13] The Texas Court of Criminal Appeals agreed and denied relief without a written order on the trial court's findings.[14]

Arzate now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his capital murder conviction.[15]  Arzate raises the following grounds for relief:

1. The state violated his right to due process by suppressing evidence that the lead homicide investigator (Chandler) was fired for dishonesty and incompetence.

2. There was insufficient evidence to support his conviction.

3. He was denied effective assistance of counsel when his trial attorney failed to impeach Richard Gonzalez.

4. He was denied due process when the trial court failed or refused to strike the testimony of a witness who violated Rule 614 of the Texas Rules of Evidence.[16]

---

[12]Id. at 13, 15.

[13]State's Proposed Findings of Fact, Conclusions of Law, and Order ("Findings and Conclusions"), Docket Entry No. 16-18, pp. 45-51.

[14]Action Taken on Writ No. 83,117-05, Docket Entry No. 16-12, p. 1.

[15]Petition, Docket Entry No. 1, p. 2.

[16]Id. at 6-7.

The respondent moves for summary judgment, arguing that Arzate is not entitled to relief because his claims are either procedurally barred or without merit under the governing federal habeas corpus standard of review.

## II. **Standard of Review**

To the extent that the petitioner's claims were adjudicated on the merits in state court, his claims are subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d). Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"'A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts.'" Matamoros v. Stephens, 783 F.3d 212,

215 (5th Cir. 2015) (citations omitted); see also Williams v. Taylor, 120 S. Ct. 1495, 1519-20 (2002). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . [which] 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Richter, 131 S. Ct. at 786 (quoting Jackson v. Virginia, 99 S. Ct. 2781, 2796, n.5 (1979) (Stevens, J., concurring)); see also White, 134 S. Ct. at 1702.

A state court's factual determinations are also entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings. See Garcia v. Quarterman, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing Summers v. Dretke, 431 F.3d 861, 876 (5th Cir. 2005); Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004)). A federal habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quoting Wood v. Allen, 130 S. Ct. 841, 849 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." Id.

### III. Discussion

#### A. Suppression of Impeachment Evidence

In his first ground for relief Arzate claims that the prosecution violated his right to due process under Brady v. Maryland, 83 S. Ct. 1194 (1963), by withholding or suppressing evidence that the lead homicide investigator on his case, former Sergeant Ryan Chandler, was the subject of an IAD investigation by HPD.[17] Arzate contends that this information was material for the

---

[17]Petition, Docket Entry No. 1, p. 6.

purpose of impeaching Chandler, who was eventually terminated by HPD for misconduct and incompetence.[18] The respondent argues that this claim is barred by the doctrine of procedural default because Arzate never presented a <u>Brady</u> claim for review at the state court level.[19] The respondent argues further, in the alternative, that Arzate's <u>Brady</u> claim is without merit.[20]

### 1. Arzate's *Brady* Claim is Procedurally Barred

On state habeas corpus review Arzate claimed that Chandler violated his right to due process during the course of his investigation by (a) obtaining his identification as a suspect through "impermissibly suggestive" means; (b) improperly influencing a witness (Richard Gonzalez) to discredit Arzate's attempt to establish an alibi, <u>i.e.</u>, that Arzate was in Mexico at the time his father-in-law was killed; (c) failing to investigate any other suspects; and (d) failing to obtain phone records, 911 calls, written or audio/video statements from witnesses, or conduct a voice identification procedure.[21] Although Arzate argued that Chandler effectively suppressed evidence by conducting an "unreliable" investigation,[22] the record confirms that Arzate did

---

[18]<u>Id.</u>

[19]Respondent's Motion, Docket Entry No. 18, p. 18.

[20]<u>Id.</u>

[21]State Habeas Application, Docket Entry No. 16-16, pp. 11-12.

[22]Memorandum in Support of § 11.07 Application for Writ of Habeas Corpus, Docket Entry No. 16-16, p. 41.

not claim at any time that the prosecution withheld evidence of the HPD internal affairs investigation that eventually resulted in Chandler's termination or any other evidence that would have been useful for impeachment in violation of <u>Brady</u>. As a result, Arzate's <u>Brady</u> claim is unexhausted. <u>See</u> 28 U.S.C. § 2254(b)(1) (requiring a petitioner to exhaust all "remedies available" in state court before seeking federal habeas review).

Arzate could have, but did not, present his <u>Brady</u> claim on state habeas corpus review. Because a successive state habeas corpus application would be barred by the Texas abuse-of-the-writ statute, <u>see</u> TEX. CODE CRIM. PROC. art. 11.07, § 4(a), this default represents an adequate state procedural ground that bars federal review of Arzate's <u>Brady</u> claim unless an exception applies. <u>See</u> <u>Finley v. Johnson</u>, 243 F.3d 215, 220 (5th Cir. 2001) (citing <u>Fearance v. Scott</u>, 56 F.3d 633, 642 (5th Cir. 1995)); <u>see</u> <u>also</u> <u>Neville v. Dretke</u>, 423 F.3d 474, 480 (5th Cir. 2005) (concluding that unexhausted claims, which could no longer be raised in state court due to Texas's prohibition on successive writs, were procedurally defaulted).

If a petitioner has committed a procedural default, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice."

Coleman v. Thompson, 111 S. Ct. 2546, 2565 (1991). Arzate has not offered any explanation for his failure to raise his Brady claim in state court and he has not demonstrated cause for his default. Arzate likewise fails to establish prejudice or that his default will result in a fundamental miscarriage of justice because he has not provided the court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 106 S. Ct. 2616, 2627 (1986); see also Schlup v. Delo, 115 S. Ct. 851, 861 (1995) (describing actual innocence as a "'gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits'") (citation omitted). The court therefore concludes that Arzate's Brady claim is barred by the doctrine of procedural default. Alternatively, the claim is without merit for the reasons explained briefly below.

### 2. Arzate's *Brady* Claim is Without Merit

In Brady the Supreme Court held that the government violates due process when it fails to disclose evidence favorable to the accused where such evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 83 S. Ct. at 1196-97. The government's duty to disclose extends to both impeachment and exculpatory evidence. See United States v. Bagley, 105 S. Ct. 3375, 3380 (1985). Thus, to establish a Brady violation a defendant must prove that (1) evidence was withheld or suppressed by the prosecutor, either

willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it has impeachment value; and (3) the evidence was material such that prejudice ensued. See Strickler v. Greene, 119 S. Ct. 1936, 1948 (1999). Evidence is material under Brady "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 105 S. Ct. at 3383.

As noted above, Arzate alleges that prosecutors withheld impeachment evidence showing that former Sergeant Chandler was the subject of an IAD investigation for misconduct that led to his eventual termination in 2014. The offense that Arzate was charged with occurred in the early morning hours of August 20, 2011,[23] and his trial took place the following year during November of 2012.[24] Arzate does not allege facts or present any evidence showing that Chandler was under investigation during the time he was assigned to investigate Arzate's case or that there was anything to suppress before his trial took place in 2012. As a result, Arzate's allegations of wrongful suppression are "purely speculative" and cannot support a Brady claim. See Hughes v. Johnson, 191 F.3d 607, 629-30 (5th Cir. 1999) (citing United States v. Pretel, 939 F.2d 233, 240 (5th Cir. 1991)).

---

[23]Indictment, Docket Entry No. 14-9, p. 21.

[24]Harris County Criminal District Docket Sheet, Docket Entry No. 14-12, pp. 35-38.

Moreover, the record reflects that Chandler's testimony was brief and limited to facts about the investigation,[25] which was subject to scrutiny on cross-examination by defense counsel.[26] The record further shows that Chandler's testimony about the investigation that led to Arzate's arrest was corroborated by testimony from additional fact witnesses, including Arzate's mother-in-law, Maria Valdez, and two other family members who identified Arzate as the man who broke into the family mobile home and shot Guillermo Valdez to death.[27] Impeachment evidence is not material where the testimony of the witness who might have been impeached is strongly corroborated by additional evidence supporting a guilty verdict. See United States v. Weintraub, 871 F.2d 1257, 1262 (5th Cir. 1989) (citing United States v. Risken, 788 F.2d 1361, 1375 (8th Cir. 1986)); see also Rocha v. Thaler, 619 F.3d 387, 396-97 (5th Cir. 2010).

Arzate has not shown that Chandler engaged in misconduct during the investigation of his case or that Arzate was convicted as the result of any wrongdoing that rendered his trial unfair. Arzate has not otherwise shown that any impeachment evidence was suppressed by prosecutors or that the result of his trial would

---

[25]Court Reporter's Record, vol. 5, Docket Entry No. 15-18, pp. 216-34.

[26]Court Reporter's Record, vol. 6, Docket Entry No. 15-19, pp. 77-118, 123-31.

[27]Court Reporter's Record, vol. 5, Docket Entry No. 15-18, pp. 34-43, 129-51, 196-203.

-15-

have been any different if that evidence had been available to the defense. Therefore, Arzate has not established that there was a violation of <u>Brady</u> in his case. Because Arzate's <u>Brady</u> claim has no merit, he is not entitled to relief on the claim.

## B. Legal Sufficiency of the Evidence

Arzate contends that his conviction violates due process because it is not supported by legally sufficient evidence.[28] The respondent argues that Arzate's challenge to the sufficiency of the evidence, which was raised and rejected on direct appeal, is without merit.

On habeas corpus review of a state court conviction, a challenge to the legal sufficiency of the evidence is governed by <u>Jackson v. Virginia</u>, 99 S. Ct. 2781 (1979), which reflects the federal constitutional due process standard. <u>See</u> <u>In re Winship</u>, 90 S. Ct. 1068, 1073 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 99 S. Ct. at 2789 (emphasis in original).

---

[28]Petition, Docket Entry No. 1, p. 6.

The Supreme Court has emphasized "that <u>Jackson</u> claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2062 (2012) (per curiam). A federal habeas corpus court questions only whether the state court's assessment of the already-strict <u>Jackson</u> standard was unreasonable. <u>See</u> 28 U.S.C. § 2254(d)(1). Together, <u>Jackson</u> and the AEDPA require a "double dose of deference that can rarely be surmounted." <u>Boyer v. Belleque</u>, 659 F.3d 957, 964 (9th Cir. 2011).

In conducting its review under this doubly deferential standard, the court looks to the last reasoned state judgment that considered and rejected the petitioner's federal claim. <u>See Ylst v. Nunnemaker</u>, 111 S. Ct. 2590, 2594 (1991). That judgment was issued by the intermediate court of appeals, which set forth the elements of the offense and concluded that there was more than enough evidence to support Arzate's capital murder conviction for killing Guillermo Valdez during the course of a burglary:

> To prove that Arzate is guilty of capital murder, the State had to prove beyond a reasonable doubt that Arzate, in the course of a burglary or attempted burglary, knowingly or intentionally caused Guillermo's death or intended to cause Guillermo serious bodily injury and committed an act clearly dangerous to human life that caused Guillermo's death. <u>See</u> TEX. PENAL CODE ANN. §§ 19.02(b)(1); 19.03(a)(2).
>
> We conclude the evidence supports the jury's guilty verdict. First, three witnesses who had known Arzate for years identified Arzate as the shooter based on his voice. Maria testified that she heard Arzate say "he was going to kill us" and then the shooter began shooting at

her and Guillermo. Elizabeth testified that it was
Arzate who screamed "where's the bastard" right before
she heard gunshots. Heron also testified that it was
Arzate who yelled those words. Voice identification is
an acceptable means of identification and has been held
sufficient to support a conviction. See Locke v. State,
453 S.W.2d 484, 485 (Tex. Crim. App. 1970) ("Voice is a
competent means of identification if the witness had any
previous acquaintance with the person identified"); Davis
v. State, 180 S.W.3d 277, 285-86 (Tex. App. — Texarkana
2005, no pet.) (holding voice identification sufficient
to support conviction).

Second, Arzate's conduct after the murder indicates
consciousness of guilt. There is evidence that Arzate
was in Mexico after the shooting, despite the fact that
he had not previously traveled to Mexico because his
immigration status made it impossible for him to return.
Gonzalez testified that Arzate told him the day after the
murder "something happened with his family and he doesn't
know if he's ever going to come back."

Finally, there is evidence that Arzate implicitly
admitted shooting Guillermo, explicitly asked Patricia to
create an alibi for him, and threatened both Patricia and
Gonzalez that their relatives would meet the same fate as
Guillermo if his demands were not met. Patricia
testified that Arzate sent her a letter asking Patricia
to lie about his whereabouts on the night of the
shooting. Patricia also testified that a few months
after Guillermo's murder, Arzate sent her a text message
stating that he was "sorry" and that Arzate also called
her from Mexico and threatened to do the "same thing" to
her grandma that he did to Guillermo. Gonzalez testified
that Arzate called him several times after the murder and
during one call threatened to kill Gonzalez and go after
his family if Gonzalez did not pay Arzate's brother.
Gonzalez testified that Arzate substantiated the threat
by saying, "if you don't believe me you saw what happened
to my in-laws. What do you think is going to happen to
you[?]" And, in a voicemail Arzate left Patricia on the
night of the shooting, he warned that he was going to
make her suffer like she was making him suffer.

Arzate v. State, No. 01-12-01074-CR, 2013 WL 6670854, *4 (Tex. App.

— Houston [1st Dist.] Dec. 17, 2003, pet. ref'd). In reaching this

conclusion, the court of appeals expressly followed the standard announced in <u>Jackson</u>. <u>See</u> <u>id.</u>, 2013 WL 6670854, *3-5.

Arzate does not take issue with any particular finding or conclusion by the state court of appeals, whose opinion is entitled to "great weight." <u>Parker v. Procunier</u>, 763 F.2d 665, 666 (5th Cir. 1985) (citing <u>Jackson</u>, 99 S. Ct. at 2790, n.15); <u>see</u> <u>also</u> <u>Callins v. Collins</u>, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence, . . . its determination is entitled to great deference."). Instead, Arzate maintains that the evidence is insufficient because three of the state's witnesses (Ryan Chandler, Richard Gonzalez, and Brenda Awawdeh) lacked credibility.[29] Arzate argues in particular that his conviction was based on circum-stantial evidence "manufactured" by Chandler, whose investigation was inadequate, and that Gonzalez and Awawdeh were investigated for fraud.[30] The respondent notes that Arzate offers no proof that any evidence was manufactured or tainted by Chandler.[31] The respondent acknowledges that Awawdeh, a rebuttal witness, was charged with fraud in 2016, but notes that there is no evidence that she had any involvement in a scheme to commit fraud when she testified as a rebuttal witness at Arzate's trial in 2012.[32] The respondent notes

_____

[29]Petition, Docket Entry No. 1, p. 6.

[30]<u>Id.</u>

[31]Respondent's Motion, Docket Entry No. 18, p. 24.

[32]<u>Id.</u>

further that Gonzalez testified about fraud charges that were lodged against him and that issues regarding his credibility were for the jury to resolve.[33]

The record confirms that all three witnesses were cross-examined by Arzate's defense counsel and that the jury had an opportunity to assess their credibility.[34] To the extent that Arzate asks this court to re-weigh the evidence and decide if the jury's decision was correct, this type of inquiry exceeds the scope of review permitted under the <u>Jackson</u> standard. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995) ("[U]nder <u>Jackson</u>, the assessment of the credibility of witnesses is generally beyond the scope of review."). A federal habeas corpus court may not substitute its view of the evidence for that of the fact-finder. <u>See</u> <u>Weeks v. Scott</u>, 55 F.3d 1059, 1062 (5th Cir. 1995). Under the <u>Jackson</u> standard "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted). Viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Arzate has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief under <u>Jackson</u>. The court's own review of the record shows

---

[33]<u>Id.</u> at 23-24.

[34]Court Reporter's Record, vol. 5, Docket Entry No. 15-18, pp. 164-88; Court Reporter's Record, vol. 6, Docket Entry No. 15-19, pp. 77-131, 193-204.

that there was overwhelming evidence to support the verdict. Therefore, Arzate's challenge to the sufficiency of the evidence has no merit.

## C.    Ineffective Assistance of Counsel

Arzate claims that his trial attorney was deficient for failing to adequately cross-examine or impeach Richard Gonzalez with his record of committing crimes of moral turpitude.[35]   The state habeas corpus court rejected this claim, concluding that Arzate "fail[ed] to show [that] his trial counsel's representation fell below an objective standard of reasonableness in any way and that, but for counsel's alleged deficiencies, there [was] a reasonable probability that the result of the proceeding would have been different."[36]

As the state habeas corpus court correctly noted, claims for ineffective assistance of counsel are governed by the standard found in <u>Strickland</u>.   To prevail under the <u>Strickland</u> standard a defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.   <u>Id.</u> at 2064.   "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."   <u>Id.</u>

_____

[35]Petition, Docket Entry No. 1, p. 7.

[36]Findings and Conclusions, Docket Entry No. 16-18, p. 50 ¶ 9 (citing <u>Strickland v. Washington</u>, 104 S. Ct. 2052, 2064 (1984)).

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Hoffman v. Cain, 752 F.3d 430, 440 (5th Cir. 2014) (quoting Strickland, 104 S. Ct. at 2064), cert. denied, 135 S. Ct. 1160 (2015). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 104 S. Ct. at 2065).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068. A habeas petitioner must "affirmatively prove prejudice." Id. at 2067. A petitioner cannot satisfy the second prong of Strickland with mere speculation and conjecture. See Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice. See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009); see also Lincecum v. Collins, 958 F.2d 1271, 1279-80 (5th Cir. 1992) (stating that an ineffectiveness claim based on speculation or conclusional rhetoric will not warrant relief).

Because Arzate's ineffective-assistance claim was rejected by the state court, the issue is not whether this court "'believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable — a

substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 129 S. Ct.
1411, 1420 (2009) (quotation omitted). In addition, "because the
<u>Strickland</u> standard is a general standard, a state court has even
more latitude to reasonably determine that a defendant has not
satisfied that standard." <u>Id.</u> When applied in tandem with the
highly deferential standard found in 28 U.S.C. § 2254(d), review of
ineffective-assistance claims is "doubly deferential" on habeas
corpus review. <u>Id.</u> at 1413; <u>see also</u> <u>Richter</u>, 131 S. Ct. at 788
(emphasizing that the standards created by <u>Strickland</u> and § 2254(d)
are both "highly deferential," and "'doubly' so" when applied in
tandem) (citations and quotations omitted); <u>Beatty v. Stephens</u>, 759
F.3d 455, 463 (5th Cir. 2014) (same).

The record in this case supports the state habeas corpus
court's conclusion that defense counsel was not deficient. The
record shows that Richard Gonzalez owned the auto repair business
where Arzate worked as a mechanic until the day of the shooting.[37]
Gonzalez, who testified that Arzate threatened him and made other
inculpatory remarks about the shooting incident, admitted during
his testimony that he was facing criminal charges for insurance
fraud.[38] Defense counsel cross-examined Gonzalez at length about
the charges that were pending against him, which reportedly

---

[37]Court Reporter's Record, vol. 5, Docket Entry No. 15-18,
pp. 152-66.

[38]<u>Id.</u> at 160-61.

involved multiple instances of fraud.[39]  Defense counsel also referenced Gonzalez's "criminal history" again during his cross-examination of Ryan Chandler, noting that insurance fraud was a "crime of dishonesty," which called Gonzalez's credibility into question.[40]

At the state court level, Arzate argued that his lead defense counsel was deficient because he did not cross-examine Gonzalez about other offenses, including convictions for theft (Harris County cause number 1136768); illegal dumping (Harris County cause number 1136820); and domestic assault (Harris County cause number 1155030).[41]  The state habeas corpus court found that Gonzalez's prior conviction for theft was not admissible for purposes of impeachment because he received a sentence of deferred adjudication, which he successfully discharged before the date of Arzate's trial.[42]  Likewise, Gonzalez's prior conviction for illegal dumping was not admissible for impeachment purposes because it was a misdemeanor.[43]  Although Gonzalez's prior

---

[39]Id. at 166-87.

[40]Court Reporter's Record, vol. 6, Docket Entry No. 15-19, p. 114.

[41]Indictments against Richard Gonzalez, also known as Ricardo Gonzales, Docket Entry No. 16-17, pp. 53, 55, 57.

[42]Findings and Conclusions, Docket Entry No. 16-18, pp. 47, 49 (citing Tex. R. Evid. 609(a)).

[43]Id. at 47, 50.

conviction for domestic assault was admissible, the state habeas corpus court concluded that defense counsel's failure to cross-examine Gonzalez about this offense was not deficient because it was reasonable trial strategy.[44]

The record reflects that defense counsel elected to cross-examine Gonzalez about the insurance fraud charges pending against him, arguing that Gonzalez was dishonest and that he had a motive to testify against Arzate in hopes of having the fraud charges dropped.[45] Arzate does not overcome the strong presumption that his defense counsel's chosen trial strategy, with its emphasis on showing that Gonzalez was dishonest and therefore not credible, was reasonable. See Strickland, 104 S. Ct. at 2065. Arzate does not otherwise demonstrate that his trial was tainted by his counsel's deficient performance. Given the substantial nature of the evidence against him, Arzate has not demonstrated that the result of his trial would have been any different if additional questions had been posed about Gonzalez's domestic assault conviction. Absent a showing of deficient performance and actual prejudice Arzate fails to show that he was denied effective assistance of counsel or that the state court's decision to reject this claim was

---

[44]Id. at 47, 49.

[45]See Court Reporter's Record, vol. 5, Docket Entry No. 15-18, pp. 166-87; Court Reporter's Record, vol. 6, Docket Entry No. 15-19, p. 114. See also Court Reporter's Record, vol. 7, Docket Entry No. 15-20, pp. 15-16 (closing arguments).

-25-

unreasonable. Accordingly, Arzate is not entitled to relief on this claim.

## D. Violation of the Texas Rules of Evidence

In his final ground for relief, Arzate contends that the trial court erred by refusing to strike testimony from his mother-in-law, Maria Valdez ("Mrs. Valdez"), who identified Arzate as the individual who shot her and her husband after forcibly entering their home.[46] Arzate maintains that Mrs. Valdez violated Rule 614 of the Texas Rules of Evidence by discussing the proceedings with one of her daughters (Marrilou), who was not a witness and who had been in court observing the testimony.[47]

Rule 614, commonly known as "the Rule," provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." TEX. R. EVID. 614.[48] The purpose of the Rule is "to prevent the testimony of one witness from influencing the testimony of another." Webb v. State, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989) (quoting Cook v. State, 30 Tex. App. 607, 18 S.W. 412 (1892)); see also Sponsler v. State, No. 03-11-00654-CR, 2013 WL 6002763, *10 (Tex. App. — Austin Nov. 8, 2013, pet. ref'd) (explaining that Rule 614 codifies the

---

[46]Petition, Docket Entry No. 1, p. 7.

[47]Id.

[48]A corresponding provision is found in Rule 615 of the Federal Rules of Evidence.

"witness-sequestration rule," which is "designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony") (citations omitted).

The record shows that the trial court excluded all witnesses from the courtroom pursuant to Rule 614, advising them as follows: "The witnesses cannot listen to each other testify. You can't discuss your testimony in the presence of another witness or receive information from anybody about another witness's testimony."[49] During the trial Arzate's defense counsel moved to strike testimony from Mrs. Valdez, objecting that she had a conversation with Marrilou before she testified about whether the front door was unlocked or there was forced entry into the family home.[50] The prosecutor attempted to explain that she had instigated a conversation with Mrs. Valdez by using Marrilou as a translator to communicate in Spanish, but that they did not discuss testimony given by any other witness.[51]

In Texas it is within the trial court's discretion to allow the testimony of a witness who has violated the Rule. See Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) ("[T]he ruling of the trial court on an objection to a witness testifying when he has remained in the courtroom after having been placed under the 'rule'

---

[49]Court Reporter's Record, vol. 5, Docket Entry No. 15-18, p. 4.

[50]Id. at 142-44.

[51]Id. at 142, 143.

may not be relied upon as a ground for reversal unless an abuse of discretion is shown; and until the contrary has been shown, it will be presumed on appeal that such discretion was properly exercised.") (citing <u>Valdez v. State</u>, 776 S.W.2d 162, 170 (Tex. Crim. App. 1989)).  After considering Mrs. Valdez's testimony and the parties' arguments, the trial court overruled Arzate's objections and denied his motion to strike.[52]

The respondent notes that Arzate could have but did not challenge the trial court's ruling on direct appeal.[53]  The respondent argues that the claim is barred by the doctrine of procedural default because the state habeas corpus court rejected it for procedural reasons.[54]  Specifically, the state habeas corpus court concluded that Arzate forfeited review of his claim about Maria Valdez's testimony because error was preserved but not raised on appeal.[55]  In doing so, the state habeas corpus court relied on the rule in <u>Ex parte Townsend</u>, 137 S.W.3d at 81, which held that "[e]ven a constitutional claim [in a state habeas petition] is forfeited if the applicant had the opportunity to raise the issue on appeal."  The Fifth Circuit has recognized that the rule found

---

[52]<u>Id.</u> at 143-45.

[53]Respondent's Motion, Docket Entry No. 18, pp. 34-37.

[54]<u>Id.</u>

[55]Findings and Conclusions, Docket Entry No. 16-18, pp. 48, 50 (citing <u>Ex parte Townsend</u>, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004)).

in Ex parte Townsend, which requires that a petitioner raise any claims based on the trial record on direct appeal before raising them in a state habeas petition, is an "'adequate state ground capable of barring federal habeas review.'" Scheanette v. Quarterman, 482 F.3d 815, 827 (5th Cir. 2007) (quoting Busby v. Dretke, 359 F.3d 708, 719 (5th Cir. 2004)). Because the state habeas corpus court expressly based its dismissal on a state procedural rule found adequate to bar federal review, Arzate has procedurally defaulted his federal habeas claim. See Rocha v. Thaler, 626 F.3d 815, 820-21 (5th Cir. 2010). Arzate does not overcome his default by showing that an exception applies.[56]

The respondent also argues that Arzate is not entitled to relief on any claim based on Rule 614 of the Texas Rules of Evidence because the violation, if any, does not implicate the

---

[56]Arzate argues that his default should be excused because he was denied effective assistance of counsel on direct appeal. Petitioner's Reply, Docket Entry No. 19, p. 13. Ineffective assistance of counsel can constitute cause for purposes of excusing a procedural default. See Edwards v. Carpenter, 120 S. Ct. 1587, 1591 (2000). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." Id. "In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." Id. (emphasis in original). Thus, the Supreme Court has emphasized that a claim of ineffective assistance must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Id. (quoting Murray v. Carrier, 106 S. Ct. 2639, 2646 (1986)). Because Arzate did not raise his ineffective-assistance claim at the state court level, his allegation cannot qualify as cause and does not overcome the procedural bar.

United States Constitution.[57]  The respondent correctly notes that federal habeas corpus relief is only available to vindicate rights protected by federal law and does not extend to violations of state rules of procedure.[58]  See, e.g., Manning v. Blackburn, 786 F.2d 710, 711 (5th Cir. 1986).  The Fifth Circuit has made clear that federal habeas corpus courts do not sit to review the admissibility of evidence under state law.  See Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) (citing Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991)).  An evidentiary error during a state court trial justifies federal habeas corpus relief only if the error is so extreme that it constitutes a denial of fundamental fairness in violation of the Due Process Clause.  See Little, 162 F.3d at 862; see also Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir. 1988).  The alleged evidentiary error must be "'a crucial, critical, or highly significant factor in the context of the entire trial.'"  Bridge, 838 F.2d at 772 (quoting Thomas v. Lynaugh, 812 F.2d 225, 230 (5th Cir. 1987)).  To obtain relief the petitioner must show that the trial court's error in admitting the evidence had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 113 S. Ct. 1710, 1714 (1993) (quoting Kotteakos v. United States, 66 S. Ct. 1239, 1253 (1946)).

_____

[57]Respondent's Motion, Docket Entry No. 18, pp. 34-37.

[58]Id. at 37.

Arzate appears to argue that Mrs. Valdez's testimony was significant because the state had no other proof that he forcibly entered the home, which is a requisite element for purposes of showing that the murder occurred during the course of a burglary.[59] The court disagrees. The evidence presented at trial was more than sufficient to show that Arzate shot and killed Guillermo Valdez after entering the Valdez family home in the middle of the night without permission. In this context, the trial court's error, if any, did not have a substantial effect on the jury's verdict.[60] See Brecht, 113 S. Ct. at 1714. Because the alleged error was harmless, Arzate is not entitled to relief on his claim that the trial court erred by refusing to strike the testimony given by Mrs. Valdez.

Because Arzate has failed to establish a valid claim for relief, Respondent's Motion for Summary Judgment will be granted and the Petition will be denied.

---

[59]Petition, Docket Entry No. 1, p. 7.

[60]The record reflects that Marrilou only spoke to her mother as a translator for the prosecutor in preparation for her mother's giving testimony. See Court Reporter's Record, vol. 5, Docket Entry No. 15-18, pp. 142, 143. The record does not establish that the prosecutor or Marrilou relayed information to Maria Valdez about any particular witness's testimony. Assuming that she did and that Maria Valdez heard about testimony given by another witness, there is no showing that Mrs. Valdez's testimony was influenced by what she heard or that a violation of Rule 614 occurred. See Archer v. State, 703 S.W.2d 664, 667 (Tex. Crim. App. 1986) (holding that a violation of the "rule" requires reversal only where the witness's testimony corroborates material testimony of other witnesses for the State or contradicts the testimony of any defense witness that he heard). For this additional reason, Arzate's claim fails.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encourage-ment to proceed further."'" Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After

careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

### V.  Conclusion and Order

The court **ORDERS** as follows:

1.  Respondent's Motion for Summary Judgment (Docket Entry No. 18) is **GRANTED**.

2.  Francisco Arzate's Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3.  A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 7th day of September, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE